IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT SOUTHWORTH,                                                   Civil No. 04-6252-AA
                                                                                                          OPINION AND ORDER

        Plaintiff,

   vs.

STEELWORKER WESTERN INDEPENDENT
SHOPS PENSION PLAN,

        Defendant.
_____

Eric Yandell
Heltzel, Upjohn, Williams, Yandell,
   Roth, Smith & Petersen, P.C.
P.O. Box 1048
Salem, Oregon 97308
     Attorney for plaintiff

R. Bradford Huss
Robert F. Schwartz
Clarissa A. Kang
Trucker & Huss
120 Montgomery Street, 23rd Floor
San Francisco, California 94104

Page 1 - OPINION AND ORDER

Jeffrey J. Matthews
Harrang Long Gary Rudnick P.C.
360 East 10th Avenue, Suite 300
Eugene, Oregon 97401-3248
    Attorneys for defendant

AIKEN, Judge:

The parties cross move for summary judgment pursuant to an action filed by plaintiff under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1101 et seq. ("ERISA").

BACKGROUND

Plaintiff brought this action to clarify and declare his rights as a participant under the Steelworkers Western Independent Shops Pension Plan (the Plan), which is an employee pension benefit plan governed by ERISA.

The Plan was established on October 1, 1967. Beginning August 1, 1974, on behalf of its Union employees, Oregon Metellurgical Corporation (Oremet) began contributing to the Plan trust fund (the Fund) now administered by the Plan Trustees. Plaintiff is a current Oremet employee, a member of the United Steelworkers of America Local 7150 (the Union), and a vested Participant in the Plan. At the time the Complaint was filed, plaintiff was 53 years old and had accrued 16 full Vesting Credits.

The basic Plan document has been revised several time. Several employers, including Oremet (with Union concurrence),

Page 2 - OPINION AND ORDER

have purchased special provisions for their employees. In 1989, Oremet purchased a group of special benefits commonly referred to as the "Rule of 75" (the Rule).

Oremet employees become fully vested in the Plan when they earn 5 Vesting Credits. Article 8 of the Plan Document provides that a Vesting Credit is earned when an employee has been credited with 1,000 hours worked within a given "Plan Year," which runs from October 1 through September 30. A Participant who is credited with working at least 450 hours but less than 1,000 hours in a given Plan year accrues a fractional Vesting Credit, measured to the nearest two decimal places.

A vested Participant may elect to receive a "Normal Pension Benefit" on his "Normal Retirement Date." Under the standard Plan provisions, the earliest Normal Retirement Date is age 65. Under the Rule of 75, a vested Oremet Participant qualifies for a full Normal Retirement Pension Benefit when his age and Vesting Credit total 75, even if that date occurs before he turns 65 years old.

Effective July 1, 1989, the special Oremet Normal Pension Benefit stated:

> [T]he Normal Retirement Date of a Participant who is an Employee of Oremet titanium shall be the first day of the month coinciding with or immediately preceding the date the Participant's age when added to his Vesting Credits equal seventy-five (75) if such date is earlier than that otherwise provided in section 4.02 of the Plan.

Section 14.05(a) [1989 Plan Document], Plaintiff's Aff, Ex. 2.

Under the standard Plan provision, a Vested Participant who terminates service, other than for death or total permanent disability, before reaching his Normal Retirement Date can qualify for a "Deferred Normal Pension Benefit" when he turns 65 years of age if he had at least 10 Vesting Credits when he terminated. Prior to 1989, Oremet purchased a special provision pursuant to which a terminated Participant with at least 5, but fewer than 10, Vesting Credits could qualify for a Deferred Normal Pension Benefit reduced in amount according to a sliding scale. For example, a Participant with 9 Vesting Credits could receive 90% of a Normal or full Pension Benefit. Section 14.1(a) in the 2000 Plan Document eliminates the sliding scale so that a Participant with 5 or more Vesting Credits qualifies for a full Normal Pension Benefit.

Effective October 1, 1989, ¶ (b) was added to Section 14.01, which is Oremet's special Deferred Normal Pension provision. That paragraph states:

> (b) Effective October 1, 1989, the Normal Retirement Date is the first day of the month coinciding with or immediately preceding the date on which the sum of (I) and (ii) is equal to 75, where
>
> (I) is the age of the Participant; and
> (ii) is the number of the Vesting Credits for the Participant;
>
> provided that such date is earlier than the Participant's Normal Retirement Date in section 4.02.

Plaintiff's Aff., Ex. 3.

This provision is carried over verbatim in the 2000 Plan Document as § 14.1(b), missing only the introductory phrase, "Effective October 1, 1989[.]"

On July 1, 1989, Oremet also purchased a special death benefit for surviving spouses of active Oremet Participants, added as Section 14.05(c), which states:

> Effective July 1, 1989, the preretirement spousal survivor benefit paid under Section 6.01 of the Plan on behalf of a Participant who was an Employee of Oremet Titanium shall equal the payments which would have been made under a Qualified Joint and Survivor Annuity with a 100% continuation of payments for the surviving Spouse if the Participant had retired on the day before his death.

Plaintiff's Aff., Ex. 2. That provision was also carried over verbatim into the 2000 Plan Document, minus the introductory phrase ("Effective July 1, 1989"). Plaintiff's Aff., Ex. 3.

On October 1, 1989, a similar special death benefit was added as Section 14.01(c), which applies to terminated Oremet Participants. It states:

> Effective October 1, 1989, the pre-retirement spouse's death benefit under Section 6.01 shall be a monthly benefit payable in the amount of the monthly pension payable on a 100% Joint and Survivor Annuity basis from the later of the date of the earliest Early Retirement Date of the Participant or the first day of the month coinciding with or immediately following the date of death of the Participant based on the accrued benefit at the date of death.

Plaintiff's Aff., Ex. 2. Again, that provision was carried over verbatim into the 2000 Plan Document as ¶ 14.1(c) minus the

introductory phrase ("Effective October 1, 1989"). Plaintiff's Aff., Ex. 2, 3.

Defendant has previously denied a Rule of 75 based Deferred Normal Pension Benefit to a Participant who retired before she qualified under the Rule of 75 and applied for that benefit several years later when her age and Vesting Credits totaled 75, but who had not turned 65 at the time she had retired.

As noted in the various Plan provisions quoted above, a terminated Participant can begin to receive a full pension benefit at age 65, if he has accrued at least 10 Vesting Credits a the time of termination.[1] Under the special Oremet provision found in the 1984 Plan Document and continued in the 1989 version, a terminated Participant with at lest 5 Vesting Credits, but fewer than 10, could receive, on a sliding scale, a percentage of his full Normal Pension Benefit beginning on his Normal Retirement Date.[2] In 1997, Oremet discarded the sliding scale so that a terminated employee became eligible for a Termination Benefit at his Normal Retirement Date if he had at least 5 Vesting Credits on termination. § 14.1(a).

///

---

[1] Termination as used here refers to employees who terminated, voluntarily or involuntarily for reasons other than death or permanent total disability. Involuntary termination can include a firing, lay-off, or reduction in force. 1984 Plan Document, section 14.01(a).

[2] For example, a terminated Participant with 8 Vesting Credits could receive 80% of his full benefit after he reached the age of 65.

The special Rule of 75 purchased by Oremet for its employees, redefines a Participant's "Normal Retirement Date" as the date on or after which his age and Vesting Credits total 75 and allows him to receive a full pension benefit, possibly before he turns age 65. Defendant asserts the Rule of 75 does not apply to terminated employees, but only to active employees.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine

Page 7 - OPINION AND ORDER

issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

Plaintiff requests clarification on the interpretation and application of the "Rule of 75" (the "Rule") provisions purchased by employees of Oremet through the collective bargaining process. As stated above, under the Rule of 75, a participant may qualify for benefits when his age and Vesting Credits total 75, regardless of whether he or she has reached the age of 65, which is the "Normal Retirement Age" for Plan Participants of other employees that pay into the Plan.

Plaintiff argues that eligibility for full pension benefits, or the discount applied to calculate certain early pension and spousal survival benefits, should be governed by the Rule of 75 regardless of whether the Participant is an active employee of Oremet at the time he or she becomes eligible for benefits under the Rule.

///
///

Page 8 - OPINION AND ORDER

I. Standard of Review

This court must uphold defendant's determination unless the decision constitutes an abuse of discretion or is found to be so lacking in any basis as to be "arbitrary and capricious." The terms "arbitrary and capricious" and "abuse of discretion" may be used interchangeably as the Ninth Circuit uses both terms to apply the deferential standard of review. See Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279 (9th Cir. 1990); Faft v. Equitable Life Assurance Society, 9 F.3d 1469 (9th Cir. 1993).

II. Failure to Exhaust Administrative Remedies

Defendant asserts first that this court does not have jurisdiction to hear plaintiff's complaint as plaintiff has failed to exhaust his administrative remedies. I agree.

Defendant alleges and plaintiff does not dispute that since April 2001, plaintiff has written "dozens" of pieces of correspondence to the Plan's attorneys, actuaries, the Plan Manager and Board. Much of this correspondence requested Plan documents or other information about the Plan. Some of the correspondence posed hypothetical questions asking how the Board interpreted various provisions of the Plan, including the Rule of 75 provision. Defendant has consistently responded and informed plaintiff that Participants may not "age into" the Rule of 75 benefit. Plaintiff disputed the Plan's interpretations, and by

Page 9 - OPINION AND ORDER

letter dated August 1, 2002, plaintiff requested that the Board "formally clarify every aspect of the Rule of 75 Special Provision within 30 days." By letter dated September 6, 2002, the Plan's attorney responded to plaintiff with a detailed explanation of defendant's interpretation of the Rule of 75, concluding again that the Rule only applies to Participants who are employees of Oremet and that once an Oremet Participant is no longer an employee, he or she no longer qualifies for the Rule of 75.

In August 2002, plaintiff became temporarily unemployed. By letter dated October 2, 2002, he wrote to the Trustees and requested "official notification of the exact date on which I will be eligible to claim a Deferred Normal Pension" under the Rule of 75. By letter dated October 17, 2002, the Plan Manager advised plaintiff that because plaintiff's October 2, 2002, letter requested information regarding his eligibility for a Plan benefit, the Plan was treating his letter as an initial claim for benefits. The letter stated that plaintiff would not qualify for benefits pursuant to the Rule of 75 unless he became reemployed by Oremet and satisfied the Rule's requirements while he was still employed. The letter also informed plaintiff of his right to appeal to the Board of Trustees within sixty days of the Plan's decision. By letter dated October 25, 2002, plaintiff indicated to the Plan Manager that the Plan's treatment of his

Page 10 - OPINION AND ORDER

letter as a claim "is invalid and obligates me in no way to participate in an appeal process."  Plaintiff did not submit an appeal from the Plan's October 17, 2002 denial of his claim for benefits pursuant to the Rule of 75.  Instead, on July 24, 2004, plaintiff filed this lawsuit at bar requesting clarification of his benefits under ERISA § 502(a)(1)(B)[3].

As a rule, plaintiffs seeking a determination of their rights under an ERISA plan are required to exhaust administrative remedies prior to initiating litigation.  Diaz v. United Agric. Employee Welfare Benefit Plan, 50 F.3d 1478, 1483 (9th Cir. 1995)("claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court")(internal citation omitted).

Plaintiff asserts that the exhaustion requirement applies only to "claims" for current benefits, and not to actions to clarify rights to future benefits.  I disagree and find that the exhaustion requirement applies to plaintiff's claims.

In Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980), the court affirmed the district court's grant of summary judgment for the Plan as to plaintiffs' claim for a "declaration of the parties' rights and duties under the trustee pension plan." Id. at 559. The court held that dismissal was appropriate because plaintiffs

---

[3] This court dismissed plaintiff's other claims for equitable relief, and for declaratory relief on behalf of other participants and beneficiaries. See Opinion and Order, December 21, 2004.

Page 11 - OPINION AND ORDER

failed to exhaust the administrative remedies provided under the plan. Id. at 567-68. Moreover, the court stated that not only "do federal courts have the authority to enforce the exhaustion requirement" in ERISA suits, but "as a matter of sound policy they should usually do so." Id. at 568.

Similarly, in Graphic Communications Union, District Council No. 2, ALF-CIO v. GCIU-Employer Retirement Benefit Plan, 917 F.2d 1184 (9th Cir. 1990), the court held that the exhaustion requirement was applicable to a union seeking a declaration of its members' vesting rights under a pension plan. The union had initially requested that the plan determine whether certain union members were eligible for special vesting rules following the sale of a facility at which the members worked. Id. at 1185. The plan's trustees determined that the special vesting rules did not apply, and subsequently denied the union's appeal as well. Id. Under the plan document, the union was then required to submit the trustees' adverse decision to binding arbitration. The union, however, chose to bypass the remaining administrative remedies, and instead brought an action under ERISA § 502(a)(1)(B) for a declaration of rights. Id.

The Ninth Circuit held that the exhaustion requirement applied and affirmed the district court's dismissal of the action. Id. at 1187. "[E]xhaustion, at least to the level of the trustees, is ordinarily required where an action seeks 'a

Page 12 - OPINION AND ORDER

declaration of the parties' rights and duties' <u>under the pension plan</u>.'" Id. (emphasis in original)(internal quotation omitted). Similarly, the parties here do not dispute that plaintiff's claims arise under the Plan. Therefore, pursuant to Ninth Circuit authority, I find that plaintiff must exhaust the administrative remedies provided by the Plan prior to filing suit.

Moreover, this court notes that according to the Ninth Circuit, "a primary reason for the exhaustion requirement" is that "prior fully considered actions by the pension fund trustees interpreting their plans and perhaps further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies." Amato, 618 F.2d at 568. Had plaintiff here submitted a claim and then an appeal to the Board on each of the issues plaintiff raises, there remains a possibility that litigation might have been avoided. At the very least, however, this court would have a fully-considered decision by the Board and a fully-developed administrative record to review, rather than six briefs on cross-motions for summary judgment, a motion to strike evidence, and numerous affidavits.

Plaintiff next asserts that his many letters to the Plan or its agents constituted exhaustion. Again, I disagree. Excepting plaintiff's October 4, 2002, letter, plaintiff's various letters

Page 13 - OPINION AND ORDER

to the Plan did not seek determinations of his own entitlement to benefits under the Plan. Instead, plaintiff's letters sought an understanding, often time using hypotheticals, of how the Plan interpreted various provisions. I find no obligation by the Plan, nor do I find any authority, to treat plaintiff's letters of inquiry as a "claim." Moreover, I find no obligation by the Plan to treat plaintiff's October 25, 2002, response letter insisting that plaintiff had no intention of participating in any appeal process as an appeal.

Lastly, I find that the Plan's October 17, 2002 letter fully complied with the requirements for an initial denial letter. <u>See</u> 29 C.F.R. §§ 2560.503-1(g)(1)(I)-(ii)(explanation in "lay language" providing specific reasons plaintiff not eligible including citation to relevant Plan provision); 29 C.F.R. § 2560.503-1(g)(1)(iii)(explained plaintiff could perfect his claim if he returned to Oremet and satisfied the Rule of 75 requirements); and 29 C.F.R. § 2560.503-1(g)(1)(iv)(advised of right to appeal within 60 days, submit additional information in support of appeal, and right to bring civil action under ERISA § 502(a) following an adverse benefit determination by the Board).

Finally, this court rejects plaintiff's argument that any attempt at exhaustion would have been "futile." In <u>Diaz</u>, the Ninth Circuit considered a similar argument where plaintiff alleged an appeal would have been futile because the benefit at

issue had been continually denied by the Plan. The court held that, "such bare assertions of futility are insufficient to bring a claim with the futility exception, which is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail." 50 F.3d at 1485.

The D.C. Circuit came to a similar conclusion when it held that, "[e]ven if one were to concede that an unfavorable decision from the Benefits Committee were <u>highly likely</u>, that does not satisfy our strict futility standard requiring a <u>certainty</u> of an adverse decision. Simply put, the denial of initial claims, which is all the record reveals, it not enough to show futility of internal Plan remedies." <u>Communications Workers of Am. v. Am. Tel. & Tel. Co.</u>, 40 F.3d 426, 433 (D.C. Cir. 1994)(emphasis in original). <u>See also</u>, <u>Carl v. Steelworkers W. Indep. Shops Pension Plan</u>, 2004 WL 2237705 at *4 (N.D. Cal. Oct. 4, 2004)(dismissing with prejudice plaintiffs' estoppel-based claims for failure to exhaust administrative remedies and rejecting argument that Plan's denial of benefits claims by similarly-situated claimants established futility).

## CONCLUSION

Defendant's motion for summary judgment (doc. 22) is granted. This lawsuit is dismissed due to plaintiff's failure to exhaust administrative remedies in accordance with the Plan's requirements. Plaintiff's cross motion for summary judgment and

Page 15 - OPINION AND ORDER

alternative motion for partial summary judgment (doc. 25) is denied as moot. Further, defendant's motion to strike evidence (doc. 54) is denied as moot. Finally, defendant's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this __25__ day of July 2005.


                                          __/s/ Ann Aiken__
                                             Ann Aiken
                                    United States District Judge